**UNITED STATES of America, Appellee,**

v.

**Michael BELL, Appellant.**

**No. 77–1894.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1978.

Decided April 19, 1978.

Robert E. Oliphant, Minneapolis, Minn., for appellant.

Daniel Scott, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Andrew W. Danielson, U. S. Atty. and Mel I. Dickstein, Asst. U. S. Atty., Minneapolis, Minn., on the brief.

Before MATTHES, Senior Circuit Judge, LAY, Circuit Judge, and HANSON,* District Judge.

MATTHES, Senior Circuit Judge.

Michael Bell, appellant, and Mario Burkhalter, apparently a friend or at least an acquaintance of appellant, were jointly indicted for transferring two sawed-off shot-

* The Honorable William C. Hanson, Senior District Judge for the Southern District of Iowa, sitting by designation.

guns without paying the transfer tax required by 26 U.S.C. § 5811,[1] in violation of 26 U.S.C. § 5861[2] and 18 U.S.C. § 2.[3] Bell was tried alone, found guilty by a jury, and committed to custody under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b), until discharged by the United States Parole Commission, as provided by 18 U.S.C. § 5017(c). On appeal, Bell contends that the district court erred in declining to propound requested *voir dire* questions; admitting certain testimony; commenting on the evidence; and omitting requested instructions. We affirm.

A brief resume of the background facts will serve to place the contentions of appellant in proper perspective. On February 22, 1977, two federal undercover agents were taken by Mario Burkhalter to appellant's apartment for the purpose of purchasing illegal firearms. Appellant testified that before the agents and Burkhalter arrived, Burkhalter had the same day "dropped the rifles off in a multi-colored blanket all wrapped," and that appellant "threw" them into his closet. However, appellant informed the agents that he did not have the guns there, but that they would probably "be here later on tonight." He also testified that he had "sort of whispered" in Burkhalter's ear to come back alone.

Later that evening, Burkhalter, accompanied by the agents, returned to appellant's apartment. According to the agents, appellant removed two sawed-off shotguns from a closet and displayed them on a bed. After satisfying themselves that the guns were in working order, the agents paid appellant a total of $110 for them. Appellant denied receiving any money from the agents. Burkhalter was paid $40 as a "finder's fee" by the agents.

Appellant attempted to persuade the jury by his testimony to find, in effect, that Burkhalter induced him to participate in the sale of the guns as a precondition to Burkhalter's payment of a debt of $45 owed to appellant. Thus, it is apparent that because of the differing versions of what transpired, the jury, of necessity, was required to pass upon the credibility of the testimony of the agents vis-a-vis the credibility of appellant as delineated in his testimony.

It is undisputed that appellant did not pay a transfer tax on the weapons. He claimed that he had no knowledge about the $200 transfer tax, and that he was willing to pay the tax "at the present time."

# I

Appellant is a black man. The jury before which he was tried was white. On *voir dire*, the district court asked the prospective jurors the following questions:

Do any of you have any prejudices about giving a fair trial to a person of a minority race?

Have any of you had any untold experiences with black people, any experiences that would be unusual of any kind that might shade your thinking in a situation of this kind?

Do any of you think that you might give more credibility to the testimony of a witness who was white than to a witness who was black?

Appellant requested that the *voir dire* include nineteen additional questions, all but one of which concerned race. The district court denied appellant's request. Appellant contends that the district court's refusal to ask the requested *voir dire* questions was reversible error. We disagree.

---

1. 26 U.S.C. § 5811 provides in pertinent part:
   There shall be levied, collected, and paid on firearms transferred a tax at the rate of $200 for each firearm transferred . . . . The tax imposed . . . shall be paid by the transferor.

2. 26 U.S.C. § 5861 provides in pertinent part:
   It shall be unlawful for any person—

(e) to transfer a firearm in violation of the provisions of this chapter . . . . .

3. 18 U.S.C. § 2(a) provides:
   Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

*Voir dire* questions concerning race are not *constitutionally* required unless the circumstances in the case "suggest a significant likelihood that racial prejudice might infect [the defendant's] trial." *Ristaino v. Ross*, 424 U.S. 589, 598, 96 S.Ct. 1017, 1022, 47 L.Ed.2d 258 (1976). *Ristaino* involved the trial of a black man for violent crimes against a white security guard. Because race was not an issue at trial, the Supreme Court affirmed the trial court's refusal to *voir dire* potential jury members concerning their racial attitudes.

In the present case, as in *Ristaino*, the issue of race was not "inextricably bound up with the conduct of the trial." *Id.* at 597, 96 S.Ct. at 1021. Consequently, the district court was under no *constitutional* obligation to probe prospective jurors for signs of racism.

Of course, a federal court does have a *non-constitutional* duty to inquire as to possible racial bias on the jury panel when the defendant is a member of a racial minority group. *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); *United States v. Powers*, 482 F.2d 941, 944 (8th Cir. 1973), *cert. denied*, 415 U.S. 923, 94 S.Ct. 1426, 39 L.Ed.2d 479 (1974). That duty was fulfilled in the case at bar, however. The questions concerning race which the district court propounded demonstrated a proper exercise of discretion. *See United States v. Hamling*, 418 U.S. 87, 140, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Thompson*, 490 F.2d 1218, 1222 (8th Cir. 1974).

## II

A. *Coconspirator's Statements.*

At trial, the undercover agents, over appellant's objection, related the substance of telephone conversations with Mario Burkhalter during which the sale of the shotguns was arranged. Appellant contends that the agents' testimony was hearsay and therefore improperly admitted. The government urges that the statements were admissible as declarations of a coconspirator under Fed.R.Evid. 801(d)(2)(E).

■ It is well-established that an out-of-court declaration of a coconspirator is admissible against a defendant if the government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy. *See United States v. Lambros*, 564 F.2d 26, 30 (8th Cir. 1977); *United States v. Frol*, 518 F.2d 1134, 1136–37 (8th Cir. 1975); *United States v. Sanders*, 463 F.2d 1086, 1088 (8th Cir. 1972); Fed.R.Evid. 801(d)(2)(E). The new Federal Rules of Evidence have caused subtle but significant changes in the way that rule is applied, however. *See United States v. Petrozziello*, 548 F.2d 20, 22–23 (1st Cir. 1977). In particular, the admissibility of an alleged coconspirator's statement is now a preliminary question for the judge, not the jury, to decide. Fed.R.Evid. 104;[4] *United States v. Petrozziello, supra; but see* Kessler, *The Treatment of Preliminary Issues of Fact in Conspiracy Litigation: Putting the Conspiracy Back Into the Coconspirator Rule*, 5 Hofstra Law Review 77 (1976). This shift in the relative functions of the judge and jury has occasioned a reevaluation of the level and type of proof necessary to demonstrate a defendant's involvement in a conspiracy sufficiently to admit a coconspirator's statement. *See* 1 Weinstein's Evidence ¶ 104[05] at 104–39–44 (1977); Bergman, *The Coconspirator's Exception: Defining the Standard of the Independent Evidence Test Under the New Rules of Evidence*, 5 Hofstra Law Review 99 (1976).

---

4. Fed.R.Evid. 104 provides in pertinent part:

(a) *Questions of admissibility generally.* Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

(b) *Relevancy conditioned on fact.* When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

1044

■ Previous cases in this circuit required that the conspiracy be proved by "substantial independent evidence . . ." *United States v. Scholle*, 553 F.2d 1109, 1117 (8th Cir. 1977); *see United States v. Frol, supra* at 1136. Other decisions spoke in terms of a "prima facie case of conspiracy . . . ." *United States v. Anthony*, 565 F.2d 533, 536 (8th Cir. 1977); *United States v. Lambros, supra* at 30 n. 4. These formulations were appropriate "when the jury ha[d] the last word . . . ." *United States v. Petrozziello, supra* at 23. But because the district court's determination of the admissibility of a coconspirator's statement is final under Fed.R.Evid. 104, we have concluded that a different standard of proof is now required. *See id.* at 22–23; *see generally United States v. Lambros, supra.* It is not necessary, however, that a defendant's complicity in a conspiracy be proved beyond a reasonable doubt for a statement to be admissible under Fed.R. Evid. 801(d)(2)(E). *United States v. Petrozziello, supra* at 23. The ordinary civil standard of preponderance of the evidence is sufficient since the district court is ruling on admissibility rather than ultimate guilt. *Id.*

■ It has been suggested that the new Federal Rules of Evidence have altered the requirement that the admissibility of a coconspirator's statement be determined on evidence exclusive of the statement itself. *See, e. g., United States v. Martorano*, 557 F.2d 1, 11–12 (1st Cir.), *rehearing denied*, 561 F.2d 406, 408–09 (1 Cir. 1977), *cert. denied*, —— U.S. ——, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978); *Bergman, supra* at 105. We believe that the requirement of independent evidence is an important safeguard, however, and therefore adhere to our traditional rule. *See Glasser v. United States*, 315 U.S. 60, 74–75, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Lambros, supra.* Accordingly, we hold that an out-of-court statement is not hearsay and is admissible if on the independent evidence the district court is satisfied that it is more likely than not that the statement was made during the course and in furtherance of an illegal association to which the declarant and the defendant were parties.

■ For the purpose of providing guidance to the district courts in future trials, we submit that the following procedural steps should be utilized when the admissibility of a coconspirator's statement is at issue, regardless of the nature of the charge or charges:

(1) If the prosecutor propounds a question which obviously requires a witness to recount an out-of-court declaration of an alleged coconspirator, the court, upon a timely and appropriate objection by the defendant, may conditionally admit the statement. At the same time, the court should, on the record, caution the parties (a) that the statement is being admitted subject to defendant's objection; (b) that the government will be required to prove by a preponderance of the independent evidence that the statement was made by a coconspirator during the course and in furtherance of the conspiracy; (c) that at the conclusion of all the evidence the court will make an explicit determination for the record regarding the admissibility of the statement; and (d) that if the court determines that the government has failed to carry the burden delineated in (b) above, the court will, upon appropriate motion, declare a mistrial, unless a cautionary instruction to the jury to disregard the statement would suffice to cure any prejudice. *See United States v. Stanchich*, 550 F.2d 1294, 1298 (2d Cir. 1977). The foregoing procedural steps should transpire out of the hearing of the jury. *See* Fed.R.Evid. 104(c).

(2) After a ruling on the record that the out-of-court declaration is admissible under Rule 801(d)(2)(E), the court may submit the case to the jury. The court should not charge the jury on the admissibility of the coconspirator's statement, but should, of course, instruct that the government is required to prove the ultimate guilt of the defendant beyond a reasonable doubt. An appropriate instruction on credibility should be given, and the jury should be cautioned with regard to the weight and credibility to be accorded a coconspirator's statement.

■ In the present case, appellant complains that the district court never made the requisite determination on the record that Burkhalter's statements were admissible under Fed.R.Evid. 801(d)(2)(E). An explicit, on-the-record finding of admissibility has never previously been required in this circuit, however. *See United States v. Kelley,* 526 F.2d 615, 619 n. 3 (8th Cir. 1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1513, 47 L.Ed.2d 766 (1976). Moreover, appellant failed to request the finding he now contends was necessary. Given the dearth of appellate guidance on point, the absence of a formal finding of admissibility was not plain error. *See United States v. Martorano, supra,* 557 F.2d at 11; Fed.R.Crim.P. 52(b). There was compelling independent evidence that appellant and Burkhalter conspired to sell firearms without payment of the required transfer tax. The agents testified that Burkhalter, for a fee, introduced them to appellant and arranged for appellant to sell them the shotguns. They further testified that both appellant and Burkhalter were present when the purchase price and a portion of the "finder's fee" were paid. In addition, the statements admitted against appellant were clearly made during the course and in furtherance of the conspiracy.[5] In short, the government unquestionably met its burden of demonstrating the admissibility of Burkhalter's statements. Consequently, the lack of an on-the-record determination of admissibility did not affect any substantial rights of appellant. *See* Fed.R.Crim.P. 52(b).

B. *Testimony on the Purpose of the Gun Control Act.*

■ On redirect examination by the prosecutor, one of the undercover agents testified concerning the statutory purpose of the

Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* Over repeated defense objections, the following was elicited:

[Sawed-off shotguns] are considered gangster type weapons, sir, because of their concealability and their use in impact upon persons.

[T]hey are readily concealable, but at the same time they afford the person carrying the firearm a great amount of fire power, and as they are five shot weapons, and they do fire shotgun shell which is a very good antipersonnel type projectile.

[B]ecause of the shortened barrel, the shot pattern, when the shot is fired, and the shotgun shell pellets go down the barrel they tend to spread out at a very fast rate so they can cover a very large area and strike a great many objects in a wide area at short range.

This testimony had little or no probative value on any issue at trial. *See United States v. Williams,* 545 F.2d 47, 50–51 (8th Cir. 1976). Since the prejudicial impact of the testimony substantially outweighed its probativeness, the district court erred in admitting it. Fed.R.Evid. 403; *see United States v. Mejia,* 529 F.2d 995, 996 (9th Cir. 1976) (per curiam). In view of the strength of the case against appellant, however, we hold that the district court's error was harmless. *See* Fed.R.Crim.P. 52(a); Fed.R. Evid. 103(a); *see generally Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

### III

■ Appellant next contends that the district court erroneously instructed the

5. One agent testified as follows:

[Burkhalter] inquired as to whether I would be interested in purchasing two sawed off shotguns and discussed the fee that he would receive for lining up the sale.

It was agreed that he would receive twenty dollars for each firearm if I were allowed—or if I were introduced to the party that had them for sale.

[Burkhalter] said that when he had finally lined the sale up he would contact me again or contact us, my partner and myself.

The other agent testified concerning a second phone conversation:

[Burkhalter] indicated to me that he was in contact with the person that had two sawed off shotguns for sale and wish[ed] to sell them to us.

jury on aiding and abetting a violation of 26 U.S.C. § 5861(e) by omitting any reference to specific intent. We find no merit in appellant's argument.

Specific intent is not required for a violation of 26 U.S.C. § 5861(e). *United States v. Thomas*, 531 F.2d 419, 421–22 (9th Cir. 1976); *United States v. DeBartolo*, 482 F.2d 312, 314–17 (1st Cir. 1973); *see United States v. Freed*, 401 U.S. 601, 607, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971). It would be anomalous to hold that specific intent was a necessary element of aiding and abetting a crime, but not of the crime itself. In the present case, it was enough that appellant *knowingly* participate in the sale of the shotguns, and the district court so instructed the jury.[6] *See Nye & Nissen v. United States*, 336 U.S. 613, 620, 69 S.Ct. 766, 93 L.Ed. 919 (1949); *cf. United States v. Kelton*, 446 F.2d 669, 670 (8th Cir. 1971) (similar instructions).

■ Finally, appellant complains of prejudicial comments by the district court in the charge to the jury. Specifically, appellant contends that the district court improperly mentioned the reasons for Burkhalter's absence from the trial. Appellant also asserts that the district court's comments on the evidence of appellant's failure to pay a transfer tax effectively directed the verdict on that issue. We have carefully reviewed the district court's comments and find no error affecting the substantial rights of appellant.

Appellant's conviction is affirmed.

---

**6.** The district court instructed the jury as follows:

[T]he law is in order to find a person guilty of a crime you need not find that he did every single thing about the crime. If he aided or assisted in some knowing way and participated in it as something he wanted to do, then he, too, is involved in the crime. If you are in on the act you are in on the crime, and I think that's the government's second bow there that even if you didn't believe that the actual transfer was made by this defendant to the two agents, he was still acting as an aider and abettor in the crime.