UNITED STATES of America, Appellee,

v.

Michael Patrick LEGATO, Appellant.

No. 81–2392.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1982.

Decided July 1, 1982.

Rehearing Denied Sept. 16, 1982.

---

Marc G. Kurzman, Lisa A. Berg, Kurzman, Shapiro & Manahan, Minneapolis, Minn., for appellant.

James M. Rosenbaum, U. S. Atty., James A. Morrow, Asst. U. S. Atty., D. Minn., Minneapolis, Minn., William A. Grunewald, Legal Intern, for appellee.

Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and GIBSON, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Michael Patrick Legato appeals his conviction after a jury trial on four counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1) (1976)[1] and 18 U.S.C. § 2 (1976),[2] and one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (1976).[3] Legato was sentenced to concurrent five-year terms in prison on each count. Legato raises two points on appeal. The first is that the district court[4] erred in admitting out-of-court statements of Legato's co-defendant. The second is that the jury was prejudiced when the district court referred to "the thing" that should not be put into evidence. Legato does not raise any issue as to the sufficiency of the evidence against him. We affirm Legato's conviction.

## I.

The indictment charged Legato with making four cocaine deals between June 21, 1979, and October 25, 1979, and with engaging in a conspiracy to distribute cocaine between the date of the first sale and the issuance of the indictment. Peter Zucco was charged as a co-defendant in each count in which Legato was charged. The Government presented evidence to show that in all four transactions Zucco sold cocaine to undercover agents, and that he was with Legato shortly before the transaction and received the cocaine from him. The Government's evidence included the testimony of Zucco, who related the above transactions, and the testimony of surveil-

---

1. 21 U.S.C. § 841(a) reads, in pertinent part:
 Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance
 . . . .

2. 18 U.S.C. § 2 reads:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever wilfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

3. 21 U.S.C. § 846 reads:
 Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

4. The Honorable Miles W. Lord, Chief Judge, United States District Court for the District of Minnesota.

lance officers who testified that they saw Zucco meet with Legato just after telling undercover officers he would get the cocaine and just before delivering the cocaine to the officers. The evidence about which Legato complains is an out-of-court statement which Zucco made to undercover officers that his source was an Italian named Mike who was the son of a St. Paul police officer. Legato fit that description. This statement was admitted near the end of the Government's case-in-chief, during the testimony of undercover officer Susan Belkair.

## II.

Legato's first argument is that the jury was prejudiced by the admission of Zucco's out-of-court declaration about the identity of his source. The district court admitted the statement on the grounds that it was a statement by a coconspirator made during the course of and in furtherance of a conspiracy, and thus was not hearsay under Fed.R.Evid. 801(d)(2)(E).[5] Legato argues that the admission of Zucco's out-of-court declaration was improper because there was not enough evidence to establish a conspiracy and because the district court did not follow the procedures this court set forth in *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978).

In *Bell*, the court addressed the question of the admissibility of testimony by undercover agents who related telephone conversations they had had with the alleged coconspirator. The court stated:

> [W]e hold that an out-of-court statement is not hearsay and is admissible if on the independent evidence the district court is satisfied that it is more likely than not that the statement was made during the course and in furtherance of an illegal association to which the declarant and the defendant were parties.

*Id.* at 1044.

In dictum, the court set forth procedures to provide guidance to district courts on the

question of admissibility of a co-conspirator's statements. *Bell* recommends that the court should, outside the presence of the jury, caution the parties that (1) the statement is being conditionally admitted, (2) the Government must show by a preponderance of the independent evidence that the statement was made in the course and in furtherance of the conspiracy, (3) the determination of admissibility will be made at the conclusion of all the evidence, and (4) if the Government fails to carry its burden the court will declare a mistrial or offer a cautionary instruction. *Bell* also states that the court should not charge the jury on admissibility of a co-conspirator's statement, and should give appropriate instructions on credibility of a co-conspirator's statement. *Id.*

The statement at issue was admitted after the following series of events. The district court knew that the out-of-court declaration would be admissible under Fed. R.Evid. 801(d)(2)(E) only if there was a conspiracy. The district court originally told the jury that the jury would determine whether there was a conspiracy and therefore whether the statement was hearsay. The defense did not object when the jury was so instructed. Later in the trial, during the Government's case-in-chief, the defense objected to admission of Zucco's out-of-court declaration. The court provisionally admitted the declaration. It later ruled, near the end of the Government's case-in-chief, that it, rather than the jury, should decide the admissibility of the statement, that a conspiracy had to be shown by a preponderance of the evidence, and that the preponderance of the evidence showed that Zucco and Legato were "working together." The court therefore admitted the evidence. The ruling came in the presence of the jury and after Zucco's testimony. The court re-

---

**5.** Fed.R.Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." However, Fed.R.Evid. 801(d) defines certain statements which are not hear-

say: "A statement is not hearsay if ... (2) *Admission by party-opponent.* The statement is offered against a party and is ... (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

minded the jurors that Zucco's credibility was a decision for them, and told the defense that the court would offer a curative instruction if it later determined the statement was inadmissible.

 The court's only deviations from the *Bell* procedures were in ruling on the admissibility of the statement before the close of all the evidence and in making the ruling in the presence of the jury. Legato argues that he was prejudiced by the deviations. He also argues that there was not proof of a conspiracy by a preponderance of the evidence.

It is true that the *Bell* procedures were not strictly followed. Post-*Bell* cases have held that the *Bell* procedures are flexible, *United States v. Baykowski*, 615 F.2d 767, 771 (8th Cir. 1980); *United States v. Littlefield*, 594 F.2d 682, 686 (8th Cir. 1979), and specifically that ruling on the admissibility of a statement before the close of all evidence is not necessarily reversible error. *United States v. Fitts*, 635 F.2d 664, 666 (8th Cir. 1980); *United States v. Deggendorf*, 626 F.2d 47, 53–54 (8th Cir.), *cert. denied*, 449 U.S. 986, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980). In *Deggendorf*, the court stated that *Bell* was substantially followed even though the admissibility ruling came at the close of the Government's case.

In the instant case, the interests of fairness with which *Bell* was concerned were not threatened by the procedures the district court followed. The *Bell* procedures reduced the possibility of evidence being admitted which ultimately is inadmissible because a conspiracy is not shown. Here the evidence of a conspiracy was so great that the problem did not arise. Primarily, there was direct testimony from the co-conspirator himself, Zucco, that there was a conspiracy between him and Legato. Zucco was cross-examined about his out-of-court declaration. Zucco's testimony was corroborated by surveillance officers who testified that they saw Zucco and Legato meet just before the transactions. In short, the evidence of the conspiracy was overwhelming.

Also, there could have been no prejudice from the timing of the ruling because the district court did not change its opinion as to the existence of the conspiracy at the close of all evidence; indeed, it is hard to see how the district court could have done so.

The only other deviation from the *Bell* procedures was in making the admissibility determination in front of the jury. However, the comments that the court made at the time of the ruling and in final instructions prevented any prejudice from arising. At the time of the ruling the court specifically told the jury they could believe that Zucco was lying. Also, the court did not use words more likely to be prejudicial, such as "conspiracy," in making its ruling. Instead the court said the defendants were "working together." In the final instructions, the court instructed the jury as to the credibility of a co-conspirator and cautioned the jury not to follow any opinion the court might have expressed about the case. Thus, under the facts of this case, the deviations from the procedures in *Bell* were insubstantial.

### III.

Legato's other point of appeal is that he was prejudiced when the district court said in the presence of the jury that "the thing" should not be put into evidence. The district court was referring to Legato's prior conviction for assault. The comment was made when the district court apparently believed that the defense counsel was trying to get the witness to mention the prior conviction and create error. The comment was proper and too ambiguous to influence the jury.

For the foregoing reasons the judgment of the district court is affirmed.