UNITED STATES of America, Appellee,

v.

Fernando Echeverria
ROMERO, Appellant.

Crim. No. 87–5436ND.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1988.

Decided Aug. 15, 1988.

Rehearing and Rehearing En Banc
Denied Sept. 28, 1988.

Allen J. Flaten, Grand Forks, N.D., for appellant.

Gary Annear, Fargo, N.D., for appellee.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

Appellant, Fernando Romero, was convicted in the District Court for the District of North Dakota [1] on a three-count indictment charging (1) distribution of marijuana in violation of 21 U.S.C. § 841(a)(1) [2] and 18

---

* The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, sitting by designation.

1. The Honorable Paul Benson, Senior District Judge of the District of North Dakota.

2. It is there enacted that:

U.S.C. § 2 (aiding and abetting);[3] (2) possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and (3) conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846.[4]

Romero contends that there was insufficient evidence to convict him of distribution; that certain evidence should have been suppressed or excluded; and that proof of conspiracy was insufficient. It is also urged that a lesser-included offense instruction should have been given with respect to the possession count; and that there should have been a separate trial of the distribution count. Unpersuaded by these arguments, we affirm.

The actual sale on April 6, 1987 of two ounces of marijuana for $100 to undercover agent Gail Dow was made by Leona DeMarce. The government's theory was that Romero had aided and abetted in the sale. We are satisfied that the evidence against Romero, though not overwhelming, was adequate to sustain the jury's verdict as to the distribution count.

The undercover officer knew that Romero (together with Leona DeMarce) lived in the house where the purchase was made. On an earlier occasion she had spoken from outside the house through an upstairs window with a man whom she asked for marijuana but he had replied that he didn't have any. On the date of the sale, Dow asked Leona DeMarce if Fernando was home. DeMarce responded that he was. Dow asked "if she had any dubies [a street term for marijuana joints]" and she said she did. As they stood in the kitchen "she hollered upstairs" asking where the marijuana was [5] and a male voice (which Dow thought to be Fernando's, with whom she had had the earlier conversation through the window) told where the marijuana was. DeMarce then took it out of a green bread-box and made the sale.[6]

These circumstances suffice, in a real-world analysis, to demonstrate to the satisfaction of the jury beyond a reasonable doubt that Romero substantially aided and abetted in executing the transaction of sale. A jury could properly conclude that the appellant knew what was going on downstairs and aided in its accomplishment.

The same facts suffice also to prove the second count's charge of possession with intent to distribute, as well as the third count's charge of conspiracy (which in essence involves concerted action and the sale to Dow could not have been completed without the cooperation and synergistic action of both DeMarce and Romero).

It is of course true that the case against Romero would have been considerably weaker if it had been limited to the evidence described above regarding the sale by DeMarce to Dow, as a consequence of

---

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ...

3. This section reads:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

4. This section provides:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

5. Her words were reported in testimony at the suppression hearing as "Hon, where's it at?" Transcript of Suppression Hearing (hereinafter "Tr. S.H.") 29. This epithet of endearment, and Fernando's baby-sitting while Leona went to bingo, and his taking their 18 month child in her automobile on his trip to Arizona to replenish his drug supply (where he hid the marijuana in diapers) tend to corroborate the existence of concerted action between them indicative of conspiracy. See Tr. S.H. 15, 17, 30; and Trial Transcript (hereinafter "Tr.") 24, 33, 39, 58, 88, 97–99. On the conspiracy issue see text at notes 18–19, *infra*.

6. For Dow's testimony as to the facts summarized in this paragraph, see Tr. 8–10.

severance of the trial of Count I from the remaining counts.[7]

■ And while it is true that Romero's own statements which he contends should have been suppressed may well have been regarded by the jury as persuasive evidence of his guilt, it is clear that they were properly admitted. They were volunteered by Romero, and were not extracted by interrogation on the part of government investigators. *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) ["*Miranda* safeguards come into play" only when a person in custody "is subjected to either express questioning or its functional equivalent," namely abnormal words or actions by the police "that the police should know are reasonably likely to elicit an incriminating response from the suspect"]; *U.S. ex rel. Church v. DeRobertis*, 771 F.2d 1015, 1018–19 (7th Cir.1985).

There was no interrogative impact in the words of the police investigators which elicited the damaging outburst on Romero's part which he seeks to have suppressed. In fact Oliver James Semans, criminal investigator for the Bureau of Indian Affairs, was answering, rather than asking, a question. Romero had been arrested pursuant to a search warrant based on statements given to the officers by DeMarce.[8] After the *Miranda* warnings had been given (which Romero said he understood, but refused to sign)[9] F.B.I. agent Spencer Hellekson asked for Romero's "cooperation." Romero asked what was meant by that term. Semans in response to Romero's question explained that it meant "naming his sources and where he got the marijuana from." Whereupon Romero exclaimed "There's no way that I'm going to reveal my sources. I've been to prison before and I'll go back."[10] This emphatic but detrimental utterance by Romero was not generated by means of artful interrogation or guile on the part of Semans. Romero himself was responsible for any harm done by these impulsive words so rashly spoken when he would have been better off if he had simply followed the widely publicized admonition to "just say no."

Romero also complains about the admission of statements made by DeMarce to Dow on a subsequent attempt by Dow to purchase drugs.[11] On this occasion DeMarce told Dow that she was out of marijuana, but that Romero had gone to Arizona to replenish their supply. DeMarce told Dow that Romero was making the trip in her car.[12] Romero had taken her little girl along on the trip, as well as one Angel Rivera who helped in the driving (Romero had no driver's licence, and was stopped in South Dakota on that charge on the way home). Rivera testified at the trial regarding the trip to Phoenix. He also testified that he had purchased marijuana from Romero at the house where Romero and DeMarce lived, and that he had seen other people buy marijuana from Romero there.[13] When the car was stopped at Fort Totten, North Dakota, on the return journey and searched pursuant to a warrant obtained by Semans, two and a half pounds of marijuana, in several parcels, was found in the car. Under the front seat on the driver's side was also found a partly burned marijuana cigarette referred to as a "roach."[14]

7. But very probably, as argued in Appellee's Brief, p. 10, much of the evidence challenged on this appeal would have come in anyhow if Count I had been severed. In any event the prosecution should not be penalized because appellant himself volunteered damaging indicia of guilt.

8. As to Romero's complaints about admission of her statements as declarations of a coconspirator, see text at notes 18–19, *infra*.

9. Tr. 112, 116, 128; Tr. S.H. 11.

10. Tr. S.H. 20, 38. By agreement of counsel the reference to Romero's prior imprisonment was eliminated from the sanitized version of the interview given by Semans and Hellekson at the trial. Tr. 57, 96–97, 128.

11. This visit was on May 19, 1987, following the two-ounce sale on April 6, 1987.

12. Tr. 17–18. The bill of sale showing her purchase of the car on April 28, 1987, for $1100 in cash, was in evidence as GX–3. Tr. 97–99.

13. Tr. 29–31.

14. Tr. 93–94.

Rivera also testified that Romero had tried to collect the $50 Rivera owed him for marijuana, saying he needed the money to replenish his supply; but on the return journey he forgave the debt. Rivera also described their visit to the residence of Romero's sister and her husband at Phoenix. Romero left the house several times, but did not tell where he was going or where he had been. After one such absence on a Sunday, he told Rivera he had "got his stash" and they started home the next day.[15]

From the foregoing it is clear that there was enough independent evidence *aliunde* to warrant admission of DeMarce's statements as having been made by a coconspirator during the course of and in furtherance of the conspiracy under the orthodox Eighth Circuit rule set forth in *U.S. v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978).[16] *A fortiori* they are admissible under the more liberal rule adumbrated in the Supreme Court's exposition of Rule 104(a) and Rule 801(d)(2)(E) of the Federal Rules of Evidence in *Bourjaily v. U.S.*, — U.S. ——, 107 S.Ct. 2775, 2780–84, 97 L.Ed.2d 144 (1987).[17]

Romero also attacks the "single act" doctrine contained in instruction # 26, based upon *U.S. v. Preiskorn*, 658 F.2d 631, 635 (8th Cir.1981).

We perceive no error in the District Court's instruction that a single act may demonstrate the existence of a conspiracy and a defendant's participation in it. Suppose a disgruntled employee of a trade association turns over to the Antitrust Division the videotaped discussion of a meeting at White Sulphur where the details of a price-fixing conspiracy were fully developed and discussed. Is it not clear that a defendant's single act of attending the meeting thus memorialized would suffice to prove the existence of the conspiracy and defendant's participation, with the consequence that the declarations of other coconspirators recorded on the tape would be admissible against him?

As adequately explained in the District Court's challenged instruction # 26, this result depends on the nature of the single act. For the rule set forth in the instruction to apply, the single act must be such that it "was so related to the conspiracy or such a qualitative part of it as to justify an inference that the defendant involved in the single act had knowledge of the broader activity which constituted the conspiracy." When that is the case the "single act may be sufficient for an inference that a given defendant was involved in a criminal enterprise of substantial scope which was likely to involve other persons." We find no error in this instruction.

Appellant likewise contends that (assuming *arguendo* that the coconspirator's statements were admissible) the District Court failed to give a cautionary instruction, in accordance with *Bell*, 573 F.2d at 1044. As a matter of fact the prudent admonition called for by *Bell* that testimony of accomplices and coconspirators should be scrutinized with caution (but nevertheless may be found credible and accepted by the jury), was adequately covered in instruction # 30. Hence there was

---

**15.** Tr. 32–35.

**16.** If a coconspirator's statements are admissible under the rules of evidence, the requirements of the Confrontation Clause are automatically satisfied, and Romero's constitutional claim under the Sixth Amendment is unfounded. *Bourjaily v. U.S.*, — U.S. ——, 107 S.Ct. 2775, 2783, 97 L.Ed.2d 144 (1987); cf. *ibid.* 107 S.Ct. at 2792 (dissenting opinion of Justice Blackmun).

**17.** *Bourjaily* was a 6–3 decision. The Court left open the question whether the hearsay statement could be admitted if there was *no* evidence *aliunde* at all. (107 S.Ct. at 2781–82). Justice Stevens said it could not. *Ibid.*, at 2783–84. Justices Blackmun, Brennan, and Marshall dissented, pointing out that admissibility depended upon agency principles, and the concept described by Judge Learned Hand as a "partnership in crime". *Ibid.*, at 2785.

no error when the District Court rejected appellant's proposed instruction #16 on the same subject. Moreover, the District Court did make, at the close of all the evidence, the determination prescribed by *Bell*, see 573 F.2d at 1044, holding that the prerequisites for receipt of the coconspirator's statements had been established.[18]

 Finally, we are not convinced that the requirements set forth in *U.S. v. Thompson*, 492 F.2d 359, 362 (8th Cir. 1974), and *U.S. v. Short*, 805 F.2d 335, 336 (8th Cir.1986), for giving a lesser included offense instruction [19] were met in the case at bar, particularly the fourth requirement that the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense.

The evidence connecting Romero with sales and intended sales, if accepted by the finder of fact, would implicate him in the more serious rather than the lesser included offense of mere possession. It is true that there was a partly burned marijuana cigarette found in DeMarce's car which Romero used on his trip to procure a supply of marijuana; but many drug dealers themselves may sometimes use the products they distribute and sell. Where a pattern of selling is established, the mere fact that Romero himself may have smoked a marijuana cigarette does not destroy the impact of the other evidence in the case, or make its importance negligible.

Accordingly, since we find no reversible error upon review of the matters urged by appellant, the judgment of the District Court is

AFFIRMED.

---

18. Tr. 158–59.

19. The requirements are thus set forth in *Thompson*, 492 F.2d at 362:

A defendant is entitled to an instruction on a lesser included offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) *there is some evidence which would justify conviction of the lesser* offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) there is mutuality, *i.e.* a charge may be demanded by either the prosecution or defense. (Italics in original).