**UNITED STATES of America, Appellee,**

v.

**Darryl Jerome GLOVER, aka "Romey", Appellant.**

No. 90–5276.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1991.

Decided Oct. 11, 1991.

Paul Engh, Minneapolis, Minn., argued, for appellant.

Nathan P. Petterson, Minneapolis, Minn., argued (Jerome G. Arnold, on brief), for appellee.

Before BOWMAN, and HEANEY, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

■ Appellant, Darryl Jerome Glover, was charged by complaint along with his codefendant girlfriend Marlo Naylor with possession of with intent to distribute, and of conspiracy to distribute, two kilograms of cocaine base ("crack") found upon execution of a search warrant in her apartment at 3528 Penn Ave. North in North Minneapolis. She seldom stayed overnight there but made frequent trips by day to and from that address. They used it as a "stash house" for drugs. Search of appellant's apartment at 700 Morgan Avenue North (where Glover and Naylor lived together and which she gave as her residence when she and Glover were arrested together in her car) revealed no drugs, but a revolver, pager, large sums of cash (discovered by a dog trained to detect the smell of narcotics), precious metals, and other paraphernalia typical of drug dealing. Appellant and Naylor were tried by a jury and convicted.[1] Appellant was sentenced to 292 months, and his girlfriend Naylor received only 120 months.[2]

He now urges this disparity as a reason for invalidating his sentence on appeal.

Seizing this last straw is almost precluded by something akin to estoppel in the light of Glover's hand-written two page letter of April 23, 1990, on behalf of Naylor:

> I ask that you please be aware of my mental and physical control over Marlo Naylor, since her becoming my companion, sometime in the beginning of 1989. We were friends before 1989 and I am responsible for her quiting [sic] her job ... In the [District Court case] I am totally responsible from A to Z for Marlo Naylor's actions including every illegal doing ... My intentions was [sic] not to destroy Miss Naylor's life but to love her and give her everything that I felt she needed. She is a beautiful young woman and is innocent of every wrongdoing ... It is only I who pays for *my* wrong doings.

■ Equally fatuous is Glover's contention that he was denied his Sixth Amendment right "to have compulsory process for obtaining witnesses in his favor." To the contrary, the Court was extremely solicitous of appellant's rights. His privately retained counsel Mr. Wylde presented a list of "16 people Mr. Glover would like subpoenaed and brought to court."

As to the value of their testimony Mr. Wylde said "I think all I can say is that I have had discussions with Mr. Glover ... and it is his desire that these people be

---

\* Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The trial was before the Honorable Edward J. Devitt, Senior United States District Judge for the District of Minnesota.

2. Denial of appellant's request for downward departure is unreviewable. *U.S. v. Evidente,* 894 F.2d 1000, 1004 (8th Cir.1990).

produced." Some of them, Glover said, were people seen going in or out of the 700 Morgan Avenue address. Some were police officers who had already testified and been cross-examined adequately by Mr. Wylde in his opinion, but whose names Glover did not remember. When asked "do you want to rest" Wylde replied "I do. But my client does not wish me to rest." The defense rested, and it was stipulated that the Marshal had attempted to serve subpoenas but without finding the addressees. Glover during the final arguments held his hand up in protest. (Appellant's brief, pp. 9–14).

It seems clear that the Court made every possible effort, with the aid of the Marshal, to serve the witnesses Glover wanted. It seems equally plain that the testimony of such witnesses would have added no strength to appellant's case.

■ Appellant also argues on appeal that evidence of an undercover agent regarding two sales of cocaine made by Glover to one Marene Arnsby in 1988 should have been excluded. This testimony showed that Glover was Arnsby's source of drugs, and drove up in Naylor's car to make delivery. The evidence was not offered against Naylor. The procedure set forth in *U.S. v. Bell*, 573 F.2d 1040, 1044 (8th Cir.1978) was followed to establish that Arnsby and Glover were coconspirators. Appellant contends that distribution of cocaine is irrelevant in a case involving "crack" but it would seem that proof of Glover's *modus operandi* in drug sales of any kind would be pertinent. In any event the error is harmless.

■ Finally Glover contends that there was insufficient evidence to connect him with the "crack" found in the 3528 Penn Avenue location. This argument is unpersuasive. Glover had in his possession a key to the Penn Avenue premises and on one occasion had paid the rent. Photographs of him and films developed with his name on the container were found there. In Glover's apartment at 700 Morgan an electric bill for the Penn Avenue apartment was found. Officer Harteau testified that Glover had been selling crack and cocaine

for a long period of time. Sellers customarily have a "stash pad" somewhere. There was sufficient evidence for the jury to find that Glover's "stash pad" was the Penn Avenue apartment where the "crack" was found.

Accordingly, the judgment of the District Court is

AFFIRMED.