# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3346

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Cindy Lou Cates, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 19, 2001

Filed: June 7, 2001

_____

Before WOLLMAN, Chief Judge, HANSEN and BEAM, Circuit Judges,

_____

BEAM, Circuit Judge.

A jury convicted Cindy Lou Cates of conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Cates appeals the district court's[1] denial of her motion to suppress a self-incriminating statement, the denial of her motion for a mistrial, and also challenges the sufficiency of the evidence. We affirm.

_____

[1]The Honorable William G. Cambridge, United States District Court Judge for the District of Nebraska.

Between 1997 and 1999, various law enforcement agencies investigated reports of illegal narcotics activity at a home in Magnolia, Iowa, which Cates shared with John Clark. In October 1999, as part of a taskforce investigation, Harrison County Sheriff Terry Baxter visited Cates' house along with Officer Sanchelli of the Omaha, Nebraska, Police Department, and Officer Sheckler of the Tri-Corp Drug Task Force. While there taking pictures, they spoke with both Cates and Clark. After that encounter, Clark repeatedly contacted both Baxter and Sanchelli and ultimately indicated that both he and Cates were interested in cooperating with the investigation. Baxter told Clark to speak with Sanchelli, who in turn arranged for himself and Sheckler to interview Clark and Cates on November 16, 1999.

At the appointed time, only Clark showed up at the police station. Wanting to interview Cates and Clark together, the officers made arrangements to meet at Cates' house. The officers arrived there a short while later, as did Cates and Clark. The officers drove an unmarked car, were not in uniform, and did not draw their weapons. During the interview, Sanchelli and Sheckler remained on the porch. Cates and Clark were free to leave, and at different times each got up and entered the house, unescorted and unobserved by the officers.

The interview began with Clark and Cates filling out financial affidavits in order to request counsel. When Sanchelli indicated the start of the interview, Clark said "without talking to our attorneys first?" Sanchelli testified that he responded:

> Since you guys were persistent in trying to get ahold of me to cooperate
> and that's all you told me in the past that you wanted to cooperate with me
> in this investigation, we can either do the interview now or I can go back
> to Omaha.

Clark and Cates then gave an interview lasting several hours. During the interview, Cates recounted her activities buying and selling methamphetamine.

On January 20, 2000, a grand jury indicted Clark and Cates. The two separately moved to dismiss, to suppress their statements, and also for severed trials. The district court denied the motions to dismiss and for suppression, but granted the separate trials. A jury found Cates guilty on May 21, 2000. Clark pled guilty on June 6, 2000.

Cates first appeals the district court's refusal to suppress the incriminating statements she made during the November 16 interview. She argues these statements were made during a custodial interrogation and without the benefit of a <u>Miranda</u> warning. We review a district court's evidentiary rulings for clear error. <u>United States v. Griffin</u>, 922 F.2d 1343, 1348 (8th Cir. 1990). We must affirm "unless the decision of the district court is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or in light of the entire record we are left with a firm and definite conviction that a mistake has been made." <u>Id.</u>

A <u>Miranda</u> warning must be given whenever law enforcement officers interrogate a suspect who has either been arrested or "under any other circumstances where the suspect is deprived of his freedom of action in any significant way." <u>Griffin</u>, 922 F.2d at 1347. In making such a determination we look to the assessment a reasonable person would make if placed in the defendant's position, <u>Thatsaphone v. Weber</u>, 137 F.3d 1041, 1045 (8th Cir. 1998), which turns on the totality of the circumstances, <u>United States v. Chamberlain</u>, 163 F.3d 499, 503 (8th Cir. 1998).

The record amply demonstrates that Cates' statements were not made during a custodial interrogation. Clark contacted the officers. The officers and Cates arrived at the interview site separately. The officers were not in uniform and did not draw their weapons. The officers had no intention of arresting anyone, nor did they do so. Cates was free to get up and leave, and indeed did actually enter the house unescorted during the interview. The officers stressed to Cates that whether or not she submitted to the interview was a choice that had to be of her own free will, and Cates never indicated a desire not to talk. Contrary to Cates' assertions, Officer Sanchelli's response to

Clark's question about speaking to their attorneys was not coercive but rather a statement about the officer's relative willingness to interview Cates and Clark. On the record before us, the district court's conclusion was not clearly erroneous.

Cates next appeals the district court's denial of her motion for a mistrial. At trial, the prosecution sought testimony from both Sheriff Baxter and Officer Sanchelli regarding statements made by Clark, arguing that they fell within the co-conspirator exception to the hearsay rule. See Fed. R. Evid. 801(d)(2)(E). The district court properly invoked the procedure established in United States v. Bell, 573 F.2d 1040, 1043-44 (8th Cir. 1978), for handling such statements. Under that scheme, statements may be admitted conditioned on the government's proving, by a preponderance of the independent evidence, that the statement was made by a co-conspirator during and in furtherance of a conspiracy. Id. at 1044. Where the government subsequently fails to meet its burden, in instances where a curative instruction will not suffice, the district court should declare a mistrial. Id. Cates argues the prosecution's conduct in this case warranted a mistrial.

First, Cates fails to direct us to any specific improperly admitted statements, an oversight we have previously found sufficient to dispose of a Bell appeal. See United States v. Jorgensen, 144 F.3d 550, 562 (8th Cir. 1998). Our own review of the record, moreover, fails to turn up a single improperly admitted statement. Indeed, defense counsel promptly objected each time the prosecution asked such a question, and the district court sustained all but one of those objections. And the one question the district court permitted did not elicit as its answer a statement by Clark.

While opaque, Cates' argument might be that the government's mere attempt to elicit such testimony somehow tainted the jury or unfairly prejudiced her defense, and therefore warranted a mistrial. It might be that under certain circumstances, a prosecutor's conduct might be so egregious or deliberate as to warrant such a result. The record before us, however, reveals no such conduct. The government appears to

have held a good faith belief that Clark's statements fell within the co-conspirator rule, a pre-requisite for admission, which the district court must determine. The Federal Rules of Evidence and our decision in <u>Bell</u> leave room for the type of inquiry that occurred here. We agree with the district court that no mistrial was warranted.

Finally, Cates challenges the sufficiency of the evidence. We view the evidence in a light most favorable to the jury's verdict. <u>United States v. Castillo</u>, 171 F.3d 1163, 1165 (8th Cir. 1999). We will affirm the jury so long as the evidence would permit a reasonable jury to find the defendant guilty beyond a reasonable doubt. <u>United States v. Smith</u>, 104 F.3d 145, 147 (8th Cir. 1997).

After reviewing the record, we are satisfied the evidence supported Cates' conviction. In her own statements to Officers Sanchelli and Sheckler, Cates related having purchased methamphetamine from a number of other individuals. Officer Sanchelli testified as to how such amounts could be broken up and resold at a profit. At trial, John Dunn, a long-time friend of Cates and Clark testified to having purchased methamphetamine from Cates. He recounted having accompanied Cates to purchase methamphetamine from an individual named "Jay" for the purpose of resale and testified to having sold methamphetamine for Cates. Cindy Allen, another friend of Cates', testified to buying "teeners" and "8-balls" of methamphetamine from Cates, and also to accompanying her to purchase narcotics from another individual named "Joe." The record as a whole supports the jury's conviction.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.