# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-2157

_____

United States of America

*Plaintiff - Appellee*

v.

Luis Vallejo

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 14, 2014
Filed: December 15, 2014
[Unpublished]

_____

Before RILEY, Chief Judge, BEAM and GRUENDER, Circuit Judges.

_____

PER CURIAM.

A jury convicted Luis Vallejo of conspiracy to distribute or possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and possession with intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Vallejo requests

a new trial on the grounds that the district court[1] erred by admitting a coconspirator's out-of-court statement that identified Vallejo's role in the conspiracy. Vallejo also challenges the reasonableness of his 188-month sentence. We affirm.

On January 22, 2014, a federal grand jury indicted Vallejo and several other defendants in a five-count drug conspiracy indictment. Before trial, the government notified the district court that it intended to offer an out-of-court statement of a coconspirator against Vallejo pursuant to Federal Rule of Evidence 801(d)(2)(E). Vallejo made an oral motion in limine to exclude this statement. The district court informed the parties that it would conditionally admit the statement under United States v. Bell, 573 F.2d 1040 (8th Cir. 1978),[2] and that at the conclusion of all the evidence it would make a final determination regarding the admissibility of the statement.

At trial, the government produced substantial witness testimony implicating Vallejo in the conspiracy. Detective Robert Branch testified that on May 24, 2013, he arrested Jorge Munoz-Ramon pursuant to his investigation of a methamphetamine drug trafficking organization. Munoz cooperated with police and showed Branch several locations the organization used to distribute methamphetamine, one of which was an Omaha apartment (the Apartment). That same day, officers conducted a knock-and-talk at the Apartment. As they were approaching the Apartment, officers observed Vallejo drive away, and several officers followed him. The remaining

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

[2]Bell provides that a district court may conditionally allow testimony regarding the alleged statement of a coconspirator subject to later proof "by a preponderance of the independent evidence that the statement was made by a coconspirator during the course and in furtherance of the conspiracy." 573 F.2d at 1044. At the close of the evidence, the district court is required to make an explicit determination regarding whether the government carried its burden of proof. Id.

officers were allowed into the Apartment where they discovered a stack of currency, a notebook containing drug records, approximately five pounds of methamphetamine, packaging supplies, and a suitcase that contained approximately $4,900 in currency and a hotel receipt for Vallejo. Vallejo returned to the Apartment while officers were still there and was arrested. Detective Adolfo Hernandez testified that he conducted a Mirandized interview of Vallejo and that Vallejo told Hernandez that he was from California, had been in Omaha for eight days, and that he knew there were narcotics dealings going on in the Apartment. Vallejo further stated that he had left the Apartment to go deposit $6,000 in a bank but claimed that he did not know who owned the account.

Froilan Cuevas also testified for the government. Cuevas served as Munoz's driver while he delivered methamphetamine and collected money. Cuevas testified that he went to the Apartment several times and that Vallejo began staying at the Apartment on or around May 10, 2013. Cuevas further stated that Vallejo was often present when Cuevas and Munoz arrived to pick up methamphetamine and that Vallejo had advised them to "do things right, like not do too much of things that can get attention." Cuevas also testified that on the day he and Munoz were arrested they went to the Apartment to pay money, but that they left the money inside their car because police were outside the Apartment. They found Vallejo alone in the Apartment, and he allegedly told them that police had been to the Apartment multiple times and that they should wait to bring the money inside until the police left.

The government also sought to have Cuevas testify to an out-of-court statement that Munoz allegedly made about Vallejo. After Vallejo's counsel made a hearsay objection, the district court held a sidebar and informed the parties that it would still conditionally allow this testimony under the Bell procedure. Cuevas then testified that, shortly before he and Munoz were arrested, Munoz told him that Vallejo was "coming from California to bring drugs from over there and I think he was getting paid $1,000." At the close of the evidence, the district court made a final finding on

the record that the out-of-court statement was admissible, non-hearsay testimony because it was made by a coconspirator in the course and in furtherance of the conspiracy. The district court concluded that there was substantial evidence tying Vallejo to the conspiracy and held that all of Cuevas's testimony about Vallejo, including his testimony about Munoz's out-of-court statement, was therefore admissible.

On appeal, Vallejo argues that the district court erred in admitting the out-of-court statement because it was not made in furtherance of the conspiracy and was therefore inadmissible hearsay. "We review the district court's evidentiary rulings for an abuse of discretion, keeping in mind that its discretion is particularly broad in a conspiracy trial." United States v. Davis, 457 F.3d 817, 824 (8th Cir. 2006) (internal quotation omitted). "[A]n out-of-court statement is not hearsay and is admissible" against the defendant if it is shown by a preponderance of the evidence "that the statement was made during the course and in furtherance of [a conspiracy] to which the declarant and the defendant were parties." Bell, 573 F.2d at 1044; see Fed. R. Evid. 801(d)(2)(E). "Though we interpret the phrase 'in furtherance of the conspiracy' broadly, a statement that simply informs the listener of the declarant's criminal activities is not made in furtherance of the conspiracy." United States v. Cazares, 521 F.3d 991, 999 (8th Cir. 2008) (internal quotation omitted).

Although Vallejo apparently concedes that Munoz's statement was made during a drug conspiracy to which they were both parties, he contends that the statement was merely idle chatter that in no way furthered the conspiracy. Our precedent establishes, however, that "statements are in furtherance of the conspiracy if they discuss the supply source for the illegal drugs . . . or identify a coconspirator's role in the conspiracy." Id. (alteration in original) (internal quotation omitted); United States v. Jordan, 260 F.3d 930, 933 (8th Cir. 2001); United States v. Arias, 252 F.3d 973, 977 (8th Cir. 2001). Because Munoz's statement identified Vallejo's role as the conspiracy's drug supplier, the district court did not abuse its broad

discretion with respect to the admission of the statement.  Cazares, 521 F.3d at 999. However, even if the district court improperly admitted Munoz's out-of-court statement, this error was harmless "because the government presented additional, and much more substantial, evidence linking [Vallejo] to the conspiracy."  Id.; see United States v. Sanchez-Godinez, 444 F.3d 957, 961 (8th Cir. 2006) ("An evidentiary error is harmless if the substantial rights of the defendant were unaffected and the error did not influence or had only a slight influence on the verdict." (quotation omitted)). Vallejo therefore is not entitled to a new trial.  Cazares, 521 F.3d at 999.

Vallejo also argues that the district court erred when it denied his motion for a downward departure based on aberrant behavior.  See United States Sentencing Guidelines Manual § 5K2.20.  "We have jurisdiction to review a district court's decision not to depart only where the decision is based on the district court's legally erroneous determination that it lacked authority to consider a particular mitigating factor."  United States v. Patten, 397 F.3d 1100, 1105 (8th Cir. 2005) (quotation omitted).  Vallejo contends that the district court mistook its discretionary authority when it concluded that a downward departure was not available under § 5K2.20 because Vallejo's offense of conviction was a serious drug trafficking offense.  "We presume that a district court is aware of the scope of its authority to depart."  Id.  The sentencing record indicates that the district court "was fully aware of its departure authority" and carefully considered the aberrant nature of Vallejo's conduct in its application of the § 3553(a) factors.  Id.; see 18 U.S.C. § 3553(a).  Accordingly, we may not review the district court's denial of Vallejo's requested departure.[3]  Patten, 397 F.3d at 1105.  The judgment of the district court is affirmed.

_____

_____

[3]We note in passing that the district court would have in fact committed procedural error had it granted Vallejo's motion for a downward departure based on aberrant behavior.  United States v. Bueno, 443 F.3d 1017, 1023 (8th Cir. 2006) (holding that "a district court may not grant an aberrant behavior departure if the offense of conviction was a serious drug trafficking offense.").