UNITED STATES of America, Appellee,

v.

Peter F. STRASSBURGER, Appellant.

UNITED STATES of America, Plaintiff,

v.

F. STRASSBURGER, INC., Defendant.

UNITED STATES of America, Plaintiff,

v.

SIOUXLAND QUALITY MEAT COMPANY, Defendant.

No. 93–3039.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1994.

Decided June 16, 1994.

Lawrence F. Scalise, Des Moines, IA, argued, for appellant.

Willis A. Buell, Sioux City, IA, argued, for appellee.

Before WOLLMAN, MAGILL, and BEAM, Circuit Judges.

MAGILL, Circuit Judge.

Peter Strassburger appeals the sentence imposed by the district court[1] after his conviction in a bench trial on charges of conspiracy to commit wire fraud and sale of misbranded meat, 18 U.S.C. §§ 2, 1343, 21 U.S.C. §§ 601–676; wire fraud, and various violations of the Meat Inspection Act, 21 U.S.C. §§ 601–676. Strassburger challenges the district court's application of the Sentencing Guidelines and its calculation of the amount of loss. We conclude that the district court properly applied the guidelines and that its loss calculation was not clearly erroneous. We affirm.

## I.  BACKGROUND

Strassburger was president of two related corporations: F. Strassburger, Inc., a meat wholesaler in New York, and Siouxland Quality Meats, Inc., a beef-packing plant in Sioux City, Iowa (collectively, "the Companies"). Strassburger was convicted of, among other counts, conspiracy, wire fraud, and misbranding of meat by grade and by date of production. These convictions involved, in part, the mislabeling of meat by the Companies that later sold that mislabeled meat to wholesale and retail customers ("Retailers").

First, we outline the meat-grading process. At the request of a slaughterer, the Agricultural Marketing Service grades, or labels, carcass beef. The process of grading involves evaluation of the maturity and the fat content of a carcass as a measure of the quality of the beef. The grades of the meat appear on the box in which the meat is packed and shipped. The government pro-

---

1. The Honorable Donald E. O'Brien, Senior United States District Judge for the Northern District of Iowa.

duced evidence at trial that a buyer of meat must depend on the meat's label because the buyer cannot determine the grade of meat after the carcass is cut and the meat is boxed. The top grade is U.S.D.A. prime, followed by U.S.D.A. choice ("choice"), and by grades of lesser quality. A carcass that has not been graded is referred to as a "no-roll" carcass.

Some of the Retailers chose to buy only choice meat and advertised that they would never sell meat of a lower grade than choice to the ultimate consumers of the meat ("Consumers"). The district court determined that the Companies sold no-roll meat to Retailers who had ordered choice meat. Those Retailers later sold the no-roll meat to Consumers as choice meat. At trial, some of the Retailers testified that they would not have bought or accepted no-roll meat as a substitute for the choice meat they had requested.

The district court determined that the Companies sold 2.6 million pounds of no-roll meat as choice meat and that choice meat cost five cents per pound more than no-roll meat. The district court calculated that the loss resulting from Strassburger's fraud was $130,000 and imposed an enhancement of six levels under the 1988 guidelines. Strassburger timely appealed.

## II.  DISCUSSION

Strassburger raises two points on appeal: (1) the district court improperly applied § 2F1.1(b) instead of § 2N2.1,[2] Strassburger's Br. at 10, and (2) the district court clearly erred when it determined that the loss attributable to his action was $130,000 because the Retailers were able to sell the mislabeled meat to the Consumers at a profit and therefore avoid any loss.

■ We review the district court's application of the guidelines de novo, *United States v. Gullickson,* 981 F.2d 344, 346 (8th Cir. 1992), but we review the district court's determination of the amount of loss under the clearly erroneous standard, *United States v. West,* 942 F.2d 528, 532 (8th Cir.1991).

■ Section 2N2.1 of the guidelines refutes Strassburger's first argument. Application note 2 to the commentary of § 2N2.1 states that "if the offense involved a ... *fraud* ... apply the guideline applicable to the underlying conduct, rather than this guideline." U.S.S.G. § 2N2.1, comment. (n. 2) (Nov.1988) (emphasis added). Strassburger was convicted of fraud for his role in the mislabeling scheme, and he has not appealed that judgment. Thus, the district court properly applied § 2F1.1 to Strassburger's fraud. *See id.; see also United States v. Arlen,* 947 F.2d 139, 146 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1480, 117 L.Ed.2d 623 (1992).

■ Strassburger relies on application note 7(a) to § 2F1.1 and argues that because the Retailers to whom the Companies sold the no-roll meat were able to sell it as "choice" meat to the Consumers, the victims suffered no loss. We disagree.

Application note 7(a) to § 2F1.1 does not support Strassburger's position. That note states, in pertinent part: "In a case involving misrepresentation concerning the quality of a product, the loss is the difference between the amount paid by the victim for the product and the amount for which the victim *could* resell the product received." U.S.S.G. § 2F1.1, comment. (n. 7(a)) (Nov.1992) (emphasis added). Implicit in this application note is the proposition that the victim will not perpetuate the fraud by misrepresenting the quality of the product to the next buyer of the product. *See id.* (reducing loss by amount that victim *could* resell product received); *United States v. Prendergast,* 979 F.2d 1289, 1292 (8th Cir.1992) (stating that loss not limited to actual loss resulting from the fraudulent conduct).[3] Thus, the amount for which the Retailers *could* have resold the mislabeled meat to the Consumers is the value of the meat properly labeled as no-roll meat.

---

**2.** The district court applied the 1987 version of the guidelines, including the 1988 amendments.

**3.** In this case, the Retailers had no way of knowing that the meat labeled as choice was actually

no-roll meat. The Retailers could not inform the Consumers of the true quality of the meat and therefore unwittingly passed Strassburger's fraud on to the Consumers.

We conclude that proper application of § 2F1.1 requires a determination of the price paid for the choice meat that the Retailers requested minus the value of the no-roll meat that they received. *See* U.S.S.G. § 2F1.1, comment. (n. 7(a)); *see also Prendergast,* 979 F.2d at 1292 ("[A]mount of loss ... may be either the amount of loss the defendant intended to inflict or the actual loss resulting from the fraudulent conduct, *whichever is greater.*" (internal quotations omitted)). We turn to the district court's determinations of the quantity of mislabeled meat sold and the cost differential between choice and no-roll meat.

The district court did not clearly err when it determined that Strassburger's fraud resulted in a loss of approximately $130,000 over the five-year period. The government presented evidence that the Companies sold more than 2.6 million pounds of mislabeled meat. This evidence included an invoice-by-invoice analysis of the meat sold by the Companies over the five-year period. The district court credited the government's evidence, and we cannot say that determination is clearly erroneous. *See West,* 942 F.2d at 532. Further, one of Strassburger's witnesses testified that on average choice meat costs about five cents per pound more than no-roll meat. Sentencing Tr. at 34. As a result, the district court multiplied the number of pounds of mislabeled meat by the price differential and calculated the total loss to be $130,000. That determination is not clearly erroneous. *See West,* 942 F.2d at 532.

## III.  CONCLUSION

For these reasons, we affirm the sentence imposed by the district court.