United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

Nos. 96-2939/96-3064
_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the District of |
| Gregory L. Jorgensen, | * | South Dakota. |
| | * | |
| Appellant/Cross-Appellee. | * | |
| | * | |
| ----------------------------- | * | |
| | * | |
| National Cattlemen's Beef Association; | * | |
| the CATL Fund, | * | |
| | * | |
| Amici Curiae. | * | |


_____

Nos. 96-2940/96-3064
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee/Cross-Appellant, | * |
| | * |
| v. | * |
| | * |
| Martin F. Jorgensen, Jr., | * |
| | * |
| Appellant/Cross-Appellee. | * |

```
------------------------------        *
                                      *
National Cattlemen's Beef Association;  *
the CATL Fund,                        *
                                      *
            Amici Curiae.             *
```

_____

Nos. 96-2941/96-3064

_____

```
United States of America,             *
                                      *
      Appellee/Cross-Appellant,       *
                                      *
      v.                              *
                                      *
Deborah L. Jorgensen,                 *
                                      *
      Appellant/Cross-Appellee.       *
                                      *
------------------------------        *
                                      *
National Cattlemen's Beef Association;  *
the CATL Fund,                        *
                                      *
            Amici Curiae.             *
```

_____

Nos. 96-2942/96-3064

_____

```
United States of America,             *
                                      *
      Appellee/Cross-Appellant,       *
                                      *
      v.                              *
```

Dakota Lean, Inc., doing business as    *
Dakota Lean Meats, Inc.,    *
a corporation,    *
   *
      Appellant/Cross-Appellee.    *
   *
-----------------------------    *
   *
National Cattlemen's Beef Association;    *
the CATL Fund,    *
   *
      Amici Curiae.    *

_____

Submitted:  May 21, 1997
Filed:  May 7, 1998

_____

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

The defendants appeal their convictions and sentences for conspiracy, mail fraud, wire fraud, and fraudulent sales of misbranded meat.  They make numerous claims on appeal, including insufficiency of the evidence, improper jury instructions, erroneous evidentiary rulings, abuse of discretion in providing the jury with a copy of the indictment, and improper sentencing.  The government cross-appeals, claiming error in sentencing.  We affirm the district court.[1]

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

I.

In the mid-1980s, Gregory Jorgensen conceived the idea of gathering a group of South Dakota cattle producers together to market and sell the processed beef derived from their own cattle, hoping to increase the net return from their raised cattle while enabling them to better control their own production. Acting on this idea, Gregory and his father, Martin Jorgensen, incorporated Dakota Lean, Inc., in South Dakota and began slaughtering cattle raised by them and their neighbors. Deborah Jorgensen became involved in the company after its initial organization. The company decided to concentrate on marketing and selling "heart healthy" meat products, produced from cattle raised on the Jorgensen ranch or from Jorgensen-bred animals.

When Dakota Lean sold its meat to customers, the product was accompanied by brochures making various claims about the product. Included in these claims were statements that the cattle were "genetically selected," that "strict quality control [was] maintained through individualized tracking and processing of each animal," and that the cattle were "raised on a wholesome diet of native prairie grass and selected feed stuffs without any growth hormones or implants." (Trial Ex. 3 at 15-16.) Other brochures sent to customers stated that the meat had "No Substitutes" and "No Additives" and came from cattle "selectively bred for over 30 years to yield a much lower fat and cholesterol content." (Id. at 2, 4.) Some brochures also claimed Dakota Lean meat was produced from cattle which had been "raised on a carefully controlled diet of mother's milk and prairie grasses" which was "supplemented with corn and milo, a coarse, rough-seeded sorghum, grown and milled on Dakota Lean's 16,000 acre ranch in South Dakota" as the cattle matured. (Id. at 36-37.) Additionally, according to the brochures, "computerized records keep track of each animal's food, and fat and cholesterol content levels are measured every three months." (Id.)

In 1989, when demand for their products outstripped their capacity to fill the orders from slaughtering their own cattle and those of their neighbors having the same

attributes as their own cattle, the Jorgensens decided to start buying commercial beef trim from outside suppliers. Beef trim is meat purchased from packing plants which is ordinarily used to make hamburger. None of the outside suppliers claimed their beef trim was hormone or antibiotic free, or that the cattle producing the meat had been genetically bred or fed a special diet. The Jorgensens blended this ordinary commercial outside beef trim with their own Dakota Lean meat product. Dakota Lean then sold this blended product to its customers while at the same time making the representations outlined above to its customers in the accompanying brochures. The company did not tell its customers that it was blending outside beef trim with its own meat. All told, it purchased more than a million pounds of outside beef trim to blend with its own meat.

Following a jury trial, the Jorgensens and the corporation were each convicted of conspiracy in violation of 18 U.S.C. § 371 (1994), and of several counts charging the fraudulent sale of misbranded meat in violation of 21 U.S.C. §§ 610 and 676. The jury acquitted each defendant of one or more counts of the 25-count indictment. Additionally, Gregory and Deborah Jorgensen and the corporation were each convicted of two counts of mail fraud and three counts of wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. The district court sentenced Gregory to 24 months of imprisonment, Martin to 15 months, and Deborah to 12 months and one day. The court also imposed substantial fines and periods of supervised release on the individual defendants. The defendants appeal and the government cross appeals.

## II.

### A. Sufficiency of the Evidence.

The defendants first argue that there was insufficient evidence to support any of the counts of conviction and, therefore, that the district court erred in denying their motions for judgment of acquittal.

We apply familiar standards in our review of sufficiency of the evidence claims. We consider the evidence in the light most favorable to the verdict and grant the government the benefit of all reasonable inferences. United States v. Berndt, 86 F.3d 803, 809 (8th Cir. 1996). The elements of the crime may be proven by either direct or circumstantial evidence. United States v. Hankins, 931 F.2d 1256, 1258 (8th Cir.), cert. denied, 502 U.S. 886 (1991). "We do not judge the credibility of witnesses." Id. at 1258-59. We reverse a conviction only if a reasonable fact finder could not have found the defendant guilty beyond a reasonable doubt. Id. at 1259. "This standard is a strict one, and a jury verdict should not be overturned lightly." United States v. Sykes, 977 F.2d 1242, 1247 (8th Cir. 1992).

The defendants' misbranding convictions were for violations of the Federal Meat Inspection Act. See 21 U.S.C. §§ 601-695. It is a felony under 21 U.S.C. § 676(a) for any person, firm, or corporation to violate any provisions of 21 U.S.C. § 610 with an "intent to defraud." Section 610(c) prohibits any "person, firm or corporation" from distributing in commerce meat or meat products "capable of use as human food" which are "misbranded at the time of . . . sale, transportation, offer for sale or transportation, or receipt for transportation." Meat or meat product is "misbranded" under the Act "if its labeling is false or misleading in any particular." 21 U.S.C. § 601(n)(1). "Labeling" is defined as "all labels and other written, printed or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 601(p).

The evidence supports the jury's verdicts in this case. First, the brochures that accompanied the Dakota Lean meat products qualify as "labeling" within the meaning of 21 U.S.C. § 601(p). The brochures were "written matter" that was "accompanying" Dakota Lean's meat product when it was distributed in commerce. See 21 U.S.C. § 601(p). Contrary to the defendants' assertions, Dakota Lean customers testified at trial that the literature describing the meat arrived with the product. Second, the Dakota Lean meat products sold were "misbranded" within the meaning of 21 U.S.C. §

601(n)(1). Dakota Lean's own meat had been blended with outside beef trim that did not have the qualities specified in the claims contained in the brochures. Thus, the labeling was false and misleading resulting in the misbranding. Third, the defendants caused the misbranded meat to be distributed in commerce when they sold the products to customers in various states.

There was evidence that each defendant had the requisite intent to defraud. When tours were given of the processing plant, boxes of outside beef trim were hidden behind boxes of Dakota Lean marked product to create the illusion that it was all Jorgensen-bred beef. Gregory Jorgensen gave the final order to purchase outside beef trim and to blend it with Dakota Lean's own product. He told employees that the company was mixing the outside beef trim with the company's own product but that this information was not to leave the plant. He also approved the continued use of the false and misleading brochures.

Martin Jorgensen knew of the blending of outside beef trim with the Dakota Lean product. He told the sales manager to represent the blended product as it was described in the misleading brochures. He loaned the corporation $25,000 so it could buy outside beef. Martin himself also promoted the blended product by making these same representations.

Deborah Jorgensen was actively involved in the daily operations of the company. This included selling the product to customers. She also knew that the company was blending its own meat with outside beef trim. She was personally involved in the purchasing of some of the outside beef trim. She represented the product as it was described in the misleading brochures. She was also the contact person within Dakota Lean for an advertising firm that produced many of the false and misleading brochures. While her involvement with the company was interrupted, the jury convicted her on substantive counts that occurred only after she returned to the company in September 1992, and of the conspiracy count.

Gregory and Deborah also challenge the sufficiency of the evidence to support their convictions under the mail and wire fraud statutes. The mail fraud statute, 18 U.S.C. § 1341, makes it a crime to use the mails to execute "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent . . . representations." The wire fraud statute, 18 U.S.C. § 1343, makes it a crime to "transmit[] or cause[] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing" a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent . . . representations."

The record contains sufficient evidence to support the mail and wire fraud convictions. Gregory and Deborah each had used telephones and the mails to carry out the scheme to defraud customers by misrepresenting and misbranding Dakota Lean meat for each count upon which they were convicted.

The defendants also challenge their convictions for conspiracy. The federal conspiracy statute, 18 U.S.C. § 371, makes it a crime for "two or more persons" to "conspire to commit any offense against the United States" when "one or more of such persons do any act to effect the object of the conspiracy." Under this section the government must prove "that there was an agreement to achieve an illegal purpose, that the defendant knew of this agreement and that the defendant intentionally joined the conspiracy." United States v. Agofsky, 20 F.3d 866, 870 (8th Cir.), cert. denied, 513 U.S. 909, and cert. denied, 513 U.S. 949 (1994).

The evidence is sufficient to prove each element of conspiracy. There was evidence that each defendant knowingly contributed to the furtherance of the conspiracy to misbrand. Contrary to the defendants' claims, our review satisfies us that there is evidence in the record from which a reasonable jury could infer that all the defendants had voluntarily agreed to join in the conspiracy to misbrand and

misrepresent their product.  See United States v. Murphy, 957 F.2d 550, 552 (8th Cir. 1992) (agreement can be an informal tacit understanding between coconspirators).

## B. Jury Instructions.

The defendants next argue that the district court erred in failing to give their proposed jury instruction requiring the government to prove materiality as an element of  misbranding.  The defendants claim that without a material false or misleading statement in the labeling, the meat is not "misbranded."  The defendants further argue that without such a materiality requirement the misbranding statutes, as applied to them in this criminal prosecution, are overly broad and vague, thus violating their due process rights.   Because this claim requires us to interpret the misbranding statutes, we review the claim de novo.  See United States v. Brummels, 15 F.3d 769, 771 (8th Cir. 1994).

When we interpret a statute, "the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished."  Estate of Cowart v. Nicklos Drilling Co, 505 U.S. 469, 475 (1992).  We thus examine the language of the statute in question to resolve this claim.  The relevant language provides that meat is misbranded "if its labeling is false or misleading in any particular." 21 U.S.C. § 601(n)(1) (emphasis added).  The statutory language does not require that the false or misleading statements be "material," and we decline to judicially rewrite the statute to add such a requirement.

Not requiring a materiality element is also consistent with the public policy underlying the Federal Meat Inspection Act.  Congress has determined that the companies and people engaged in the food business have an affirmative duty to insure that the food they sell to the public is safe and properly labeled.  See United States v. Park, 421 U.S. 658, 670-73 (1975); United States v. Cattle King Packing Co., 793 F.2d

232, 240 (10th Cir.), cert. denied, 479 U.S. 985 (1986).  Judicially adding a materiality requirement when none exits in the statutory text would not further congressional intent and would instead hinder it.

We also reject the argument that the statute, as applied in this criminal case, violates due process because it is overly broad and vague.  The "in any particular" language of 21 U.S.C. § 601(n)(1) is not overly broad or vague.  It simply prohibits any false or misleading statements in meat labeling without limiting the prohibition to any particular types of false or misleading claims.  This is not a difficult provision for those in the food business to follow. They may comply simply by not including any false or misleading statements in their meat labeling.  We therefore hold that the district court did not err in rejecting the defendants' proposed jury instruction on materiality.

The defendants next argue that the district court abused its discretion in refusing to give a proposed jury instruction concerning when a corporate officer may be held criminally responsible for the actions of the company.  The proposed instruction would have informed the jury that "a person is not responsible for the acts performed by other people on behalf of a corporation, even if those persons are officers, employees or other agents of the corporation."  (Appellants' App. at 83).

"When reviewing a challenge to the jury instructions, we recognize that the district court has wide discretion in formulating the instructions and will affirm if the entire charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case."  United States v. Casas, 999 F.2d 1225, 1230 (8th Cir. 1993), cert. denied, 510 U.S. 1078 (1994).

A corporate officer who is in a "'responsible relationship'" to an activity within a company that violates provisions of the federal food laws, such as meat misbranding under 21 U.S.C. §§ 610 and 676, "can be held criminally responsible even though that officer did not personally engage in that activity."  Cattle King, 793 F.2d at 240

-10-

(quoting Park, 421 U.S. at 673-74).  As previously noted, the misbranding provisions of which the corporate officers were convicted require the officer to act with an "intent to defraud."  21 U.S.C. § 676(a).  Thus, the jury could convict a defendant corporate officer if it found a defendant: (1) had an intent to defraud; and (2) either personally participated in the misbranding or was in a "responsible relationship" within the company regarding the misbranding of meat.

We first note that the defendants' proposed jury instruction does not accurately state the law set out above as it applies in this case. Under the proposed instruction the jury could not have convicted a defendant based on the actions of any officers, employees, or other agents of Dakota Lean, Inc.  However, a defendant can be held criminally responsible for the acts of  other people who are officers, employees or other agents of the company if the defendant is in a "responsible relationship."  See Cattle King, 793 F.2d. at 1230.  Thus, the district court did not abuse its discretion in refusing to give the proposed instruction.

We also find no error in the instructions that were given.  They correctly required the jury to find that each defendant had a specific intent to defraud and that each of them had caused misbranding of meat to occur.  Because the jury found the corporation guilty of six counts of misbranding without also finding any of the Jorgensens guilty of these counts, we are convinced that the jury did not find any of the Jorgensens guilty of misbranding merely because they held positions of authority in the company.  We cannot say the district court abused its discretion  in giving these instructions.  We reject the defendants' claims on this issue.

The corporate defendant next claims that the district court erred by failing to instruct the jury on the findings necessary to hold a corporation criminally liable for the acts of its officers, agents, or employees.  Because the corporation did not offer such an instruction in the district court, nor object to the court's failure to give such an instruction, we review this claim for plain error.  There is plain error if the omitted

-11-

instructions should have been given and the error affected the defendant's "substantial rights" and "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, 507 U.S. 725, 736 (1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)) (alteration in original).

A corporation is criminally responsible for the "acts of its officers, agents, and employees committed within the scope of their employment and for the benefit of the corporation." United States v. Richmond, 700 F.2d 1183, 1195 n.7 (8th Cir. 1983) (citing United States v. DeMauro, 581 F. 2d 50, 53 (2d Cir. 1978)) abrogated on other grounds, United States v. Raether, 82 F.3d 192 (8th Cir. 1996).

The evidence shows that on all counts of which Dakota Lean, Inc. was convicted an officer, agent, or employee of the corporation was acting within the scope of his or her employment when the act charged against the corporation was committed. Thus, even assuming arguendo that the jury was improperly instructed on this issue, Dakota Lean suffered no prejudice from this error. The integrity and fairness of the trial was not so affected as to produce a miscarriage of justice. We therefore hold the district court did not commit plain error.

The defendants next contend that the district court erred in failing to submit their "theory of defense" instructions regarding the government's alleged failure to give them notice of their violations of the Federal Meat Inspection Act. The defendants claim that the government was required to give them notice of any violation of the Federal Meat Inspection Act and to bring administrative proceedings against them before the government could bring criminal charges against them, citing 21 U.S.C. § 607(e) and 9 C.F.R. § 355.40(a). The proposed instructions did not state that the government must give the defendants notice prior to bringing criminal charges, and also failed to tell the jury what to do if the jury found that the government did not give the defendants the

notice referred to in the instruction. (See Appellants' App. at 60, 92.)[2] The proposed instructions were inadequate and incomplete. We further hold that this claimed theory of defense, i.e., that the government failed to abide by its own regulations before seeking the indictment, is not a defense submissible to the jury. Rather, it is the kind of attack on the indictment that should be made by a motion to dismiss before trial pursuant to Federal Rule of Criminal Procedure 12(b)(1) since it is a claimed defense or objection based on a defect "in the institution of the prosecution." See United States v. Henderson-Durand, 985 F.2d 970, 973 (8th Cir.) (holding a defendant's failure to

---

[2]Martin Jorgensen's proposed jury instruction provided:

> If the Secretary of Agriculture has reason to believe that any marking or labeling or the size or form of any container in use or proposed for use with respect to any article subject to the Meat Inspection Act is false or misleading in any particular, he may direct that such use be withheld unless that marking, labeling, or container is modified in such manner as he many prescribe so that it will not be false or misleading. If the person, firm, or corporation using or proposing to use the marking, labeling or container does not accept the determination of the Secretary, such person, firm, or corporation may request a hearing, but the use of the marking, labeling, or container shall, if the Secretary so directs, be withheld pending hearing and final determination by the Secretary. Any such determination by the Secretary shall be conclusive unless, within thirty days after receipt of notice of such final determination, the person, firm, or corporation adversely affected thereby appeals.

(Appellants' App. at 60.) The defendants' joint proposed jury instruction provided:

> You are instructed that the law establishing the crime of misbranding also provides that the Secretary of Agriculture does not need to report for prosecution cases where it is believed that the public interest will be adequately served by a suitable written notice of warning.

(Appellants' App. at 92.)

-13-

raise a claim of outrageous government conduct in a pretrial motion pursuant to Rule 12(b)(2) constituted waiver of the claim), cert. denied, 510 U.S. 856 (1993). The district court properly declined to submit these proposed instructions.

The defendants next argue that the district court erred in failing to instruct the jury that they had to be unanimous in determining which overt acts they found supported the conspiracy count conviction. The defendants did not object to the conspiracy instruction given and they did not offer a unanimity instruction regarding the overt acts. Thus, we review for plain error. We reject the argument because the defendants suffered no prejudice from any claimed error. The jury unanimously found all the defendants guilty of several of the same substantive misbranding counts. The facts of those misbranding counts were alleged in the indictment as overt acts done in furtherance of the conspiracy to misbrand. Thus, in finding all the defendants guilty of these acts when they were alleged as substantive counts, the jury also unanimously found that the defendants had committed these overt acts in furtherance of the conspiracy.

## C. Evidentiary Rulings.

The defendants first claim the district court erred in admitting hearsay statements of coconspirators. The defendants also claim the court erred when it failed to make an explicit ruling of admissibility regarding these statements at the close of all the evidence, in violation of United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978). District courts should be careful to make sure that final Bell rulings are made. Prosecutors who offer coconspirator statements under the nonhearsay exception have a duty to protect their record by making sure they request final Bell rulings at the close of all the evidence. A final Bell ruling determines whether or not the government has shown by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the declarant and the defendant were members of the conspiracy; and (3) that the

-14-

declarant's statements were made during and in furtherance of the conspiracy, thereby satisfying Federal Rule of Evidence 801(d)(2)(E). Bell, 573 F.2d at 1043.

Because the defendants have failed to specify by record references any particular coconspirator statements which the court allegedly erroneously admitted, we do not address their contention that the court erred in initially admitting them. United States v. England, 966 F.2d 403, 407 (8th Cir.), cert. denied, 506 U.S. 1025 (1992). Likewise, because no particular hearsay statement has been called to our attention, we are unable to test whether or not the statements were made during the course of and in furtherance of the conspiracy as required by Bell. Lacking such information (and it not being our responsibility to dig through 20 volumes of trial transcript to ferret out and examine each such statement as it may appear), we are unable to say that the failure of the district court to make a final Bell ruling so affected the substantial rights of any of the defendants as to constitute reversible error.

The defendants next claim the district court abused it discretion in admitting evidence of the Department of Agriculture's Policy Memo 114. In reviewing this evidentiary ruling, we note the district court "has broad discretion in determining what evidence to admit and its decision will be overturned on appeal only if there has been an abuse of discretion." United States v. Rogers, 939 F.2d 591, 594 (8th Cir.) cert. denied, 502 U.S. 991 (1991).

Testimony at trial indicated that Policy Memo 114 was sent to all meat producers who had obtained a grant of federal meat inspection, although the defendants denied ever receiving it. The federal meat inspector assigned to the Dakota Lean plant said he had not seen it either. The memo advised producers that "point of purchase" literature should only make claims that could also be made on meat wrappers or labels. The defendants argue that by admitting the memo the jury was allowed to convict them for a violation of this policy memo, rather than for a violation of the statute. We reject this argument.

First, the district court cautioned the jury prior to the admission of the policy memo that the memo itself did not set out the law. Also, the district court properly instructed the jury on the elements required to be proven for misbranding, including the required intent to defraud. The court specifically set out what "intent to defraud" meant. We are therefore confident that the jury did not use the memo for the improper purpose of using a standard different from the statute whose violation could be punished criminally.

The memo was also relevant. The government's proffered reason for admission of Policy Memo 114 was to show "discourse between [the] Dakota Lean Meat plant and [the] Food Safety Inspection Service regarding claims that they would put on a product that may relate to nutrition, and diet, and so forth regarding the labeling." (Trial Tr. 144.) The memo, dated July 1988, was relevant to show the defendants had been told the literature accompanying their meat shipments could be considered labeling and that it should not be false or misleading. There was testimony that the defendants had planned to put their claims of "no hormones" and "no antibiotics" on their meat package labels, but the federal meat inspector "wasn't going to allow that." Instead, the company decided to put the claims in the literature accompanying the meat, and in the so-called "point of purchase materials" distributed at meat counters. The memo was relevant because it tended to show that the defendants acted with an intent to defraud when they made the representation on the accompanying literature. It was for the jury to determine whether the defendants ever saw the memo. We hold the district court's admission of Policy Memo 114 into evidence was not an abuse of discretion.

With respect to the admission of the testimony of the government's witness Mel Coleman, we agree with the district court that it was of limited relevancy. Given the cautionary and limiting instruction that court gave to the jury concerning Coleman's testimony, we do not believe the court abused its broad discretion in permitting the jury to hear it.

The defendants next claim the district court erred in submitting an unredacted indictment to the jury because they claim some overt acts alleged in the indictment were not proven. "Submission of the indictment to the jury is a matter within the sound discretion of the trial court provided the jury is admonished that the indictment does not constitute evidence of any kind." United States v. Wagoner, 713 F.2d 1371, 1377 (8th Cir. 1983). Although the "better course" is for the trial court to redact the indictment "if the government has not presented evidence supporting allegations in the indictment," reversal is required only if the defendant suffered prejudice as a result. England, 966 F.2d at 408. The district court admonished the jury that the indictment did not constitute evidence of any kind. The district court instructed the jury at both the beginning and the end of the trial that the indictment was not evidence.

Further, even assuming arguendo that no evidence was presented for some of the overt acts alleged in the conspiracy count, we find there was no prejudice to the defendants. Proof of one overt act in furtherance of the conspiracy is sufficient to convict under the statute in this case. See United States v. Parker, 586 F.2d 1253, 1258 n.2 (8th Cir. 1978). There was ample proof of at least one overt act here. We hold the district court did not abuse its discretion in submitting the indictment to the jury.

D. Sentencing.

The defendants next challenge the district court's sentencing order. They argue the district court erred in determining the amount of loss caused by the defendants' fraud. See U.S. Sentencing Guidelines Manual § 2F1.1(b) (1995). The government cross appeals the sentencing order, claiming the district court calculated too low of a loss figure. We review the district court's factual determination of the amount of loss under the clearly erroneous standard. United States v. Strassburger, 26 F.3d 860, 862 (8th Cir. 1994).

To determine the amount of loss attributable to each defendants' mislabeling of meat, we consider the actual loss suffered by the victims as provided in Application Note 7 of USSG § 2F1.1.   Id.  This  note states that when a fraud involves "the misrepresentation of the value of an item that does have some value . . . the loss is the amount by which the [item] was overvalued."  USSG § 2F1.1, comment. (n. 7(a)).  In other words, the loss is the amount the victim paid for the misrepresented item minus the price the victim would have paid for the item absent the misrepresentation.  Strassburger, 26 F.3d at 862-63.  However, "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."  USSG § 2F1.1 comment. (n.7).  Thus, the proper loss amount under section 2F1.1 is "either the amount of loss the defendant intended to inflict or the actual loss resulting from the fraudulent conduct, whichever is greater."  United States v. Pendergrast, 979 F.2d 1289, 1292 (8th Cir. 1992).

The Sentencing Guidelines allow the court to calculate the amount of loss with a view towards practicality, providing "the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information.  This estimate, for example, may be based on the approximate number of victims and an estimate of the average loss to each victim."  USSG § 2F1.1, comment. (n.8).

In this case the district court first ruled that the price the victims would have paid for the defendants' products if they had been properly labeled could not be determined from the evidence presented.  The court instead calculated the loss by using an estimate of the loss to each victim.  The court found that the retail profit margin on the meat bought from the defendants was one percent.  The court then calculated the total amount of misbranded meat sales attributable to each defendant by totaling the misbranded meat sales in dollars under each count in which the jury had found the particular defendant guilty.  The court then determined that the retail profit margin represented an estimate of the actual loss suffered by the victims who received the

-18-

mislabeled meat from the defendants. The court multiplied the total dollar amount of mislabeled meat attributed to a particular defendant by the one percent profit margin to determine the amount of loss under section 2F1.1 attributable to that particular defendant.

Although the district court employed a somewhat novel approach in calculating the loss value, we cannot say that it resulted in a clearly erroneous loss amount. As explained above, the loss figure is only required to be an estimate; it need not be determined with precision. See USSG §2F1.1, comment. (n.8). We conclude that the district court calculated a reasonable estimate of the losses attributable to each defendant.

We also reject the government's argument on the cross appeal that the loss figures were too low. The government points to evidence in the record supporting a higher loss calculation. The district court found this evidence was not persuasive. We hold this finding was not clearly erroneous and affirm the district court's sentencing orders.

### III.

We have considered all other arguments raised by the defendants in their appeal and find them to be without merit. We therefore affirm the judgments of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.